IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAURICE COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-239-GBW-EGT |
| | ) | |
| AARON CAPITEL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff Maurice Cooper, a sentenced inmate at the James T. Vaughn Correctional Center ("JTVCC"), filed this civil rights action against FBI special agent Defendant Aaron Capitel ("Defendant Capitel"). (D.I. 24). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5 & 14). The Court issues this omnibus opinion to address Plaintiff's various motions to conduct limited discovery (D.I. 32, 45 & 54), Plaintiff's request for entry of default and for default judgment (D.I. 36 & 39), the United States' motion to substitute (D.I. 50), Defendants' motion to dismiss (D.I. 40), Plaintiff's motion for reconsideration (D.I. 51) and Plaintiff's motion to amend (D.I. 44). For the reasons set forth below, Plaintiff's motions to conduct discovery, request for default, motion to amend and motion for reconsideration are DENIED, and the United States' motion to substitute is GRANTED. The Court also recommends that Plaintiff's motion for default judgment be DENIED and Defendants' motion to dismiss be GRANTED.

## I. BACKGROUND

According to the Third Amended Complaint, while Plaintiff was in his cell with his cellmate on July 7, 2022, Defendant Capitel and an unidentified state correctional officer opened the cell and yelled loudly, "Search warrant! Lay on your bed face down and don't move!" (D.I. 24

¶ 7). Defendant Capitel allegedly ordered the correctional officer to "search them first." (*Id.*). Specifically, Plaintiff alleges that:

> Cooper and [cellmate] was [sic] then told to sit on bed and place hands behind back; [cellmate] and Cooper complied. [Cellmate] was then ordered to remove his clothing 'slowly' by unknown prison official. [Cellmate] was then ordered to bend over and spread his butt cheeks and cough, then made him open his mouth and run his fingers through it, then made him put back on his clothes as he was led out of cell by other officers. Cooper was ordered next to perform the same search by same officer; Cooper protested the search of running his fingers through mouth after bending over and spreading butt cheeks search. Cooper was then led out of cell and placed in a locked shower next to cell.

(*Id.*). Defendant Capitel and another unidentified state correctional officer then went into Plaintiff's cell with a video camera and exited the cell with Plaintiff's belongings, leaving the cell in "total disarray." (*Id.*).

Plaintiff alleges that some of his belongings, including various legal papers,[1] were returned to him later that day with a copy of the search warrant. (D.I. 24 ¶ 8). But Plaintiff claims that the affidavit of probable cause was missing from the search warrant and that Defendant Capitel "seized documents from federal and state case of Cooper's that is [sic] not listed on inventory list." (*Id.*). A few days later, on July 10, 2022, Plaintiff filed an administrative grievance with JTVCC, describing the search in detail and requesting (among other things) return of the remainder of his legal documents, the names of all persons involved in the search, a copy of the complete search warrant and that state correctional officers wear legible name tags on their uniforms. (*Id.* ¶ 10;

---

[1] Plaintiff alleges that Defendant Capitel seized the following items from Plaintiff's cell: "1.) Teres Tinnin 302 summary; 2.) Saveer Rules grand jury summary & 302 summary; 3.) Dontae Sykes grand jury summary & 302 summary; 4.) F.B.I. cast report #1; 5.) F.B.I. cast report #2; 6.) F.B.I. cast report #3; 7.) Tyrone Roane 302 summary & grand jury summary; 8.) subpena [sic] records; 9.) Cooper package to attorney 11/16/21; [10.)] F.B.I. case files 281D-BA-5691941; 11.) Forensic report; 12.) cell tower report (2 envelopes); 13.) formal complaint misconduct." (D.I. 24 ¶ 8).

D.I. 24, Ex. A). Plaintiff's grievance was returned unprocessed on July 15, 2022. (D.I. 24 ¶ 10; D.I. 24, Ex. B). Plaintiff also alleges that he wrote CERT Warden D. Metzger, who did not respond, and Lt. DeJesus, who indicated that special agent Clinton Nanji or Patrick Ramon could have been the other agent involved in the search. (D.I. 24 ¶ 10).

On February 22, 2024, Plaintiff filed the original Complaint, naming Defendant Capitel and various other FBI special agents, federal prosecutors and an FBI informant as defendants. (D.I. 3).[2] On March 21, 2024, Plaintiff filed the First Amended Complaint, again naming Defendant Capitel and various other FBI special agents and federal prosecutors as defendants. (D.I. 6). After being granted leave to amend (D.I. 19), Plaintiff filed the Second Amended Complaint on March 11, 2025, again naming Defendant Capitel and various other FBI special agents, federal prosecutors and an FBI informant as defendants. After the Second Amended Complaint was screened under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and dismissed (D.I. 21), Plaintiff filed the operative Third Amended Complaint on June 30, 2025 (D.I. 24), naming only Defendant Capitel as a defendant. Judge Williams screened the Third Amended Complaint and issued service orders on July 25 and September 25, 2025. (D.I. 25 & 31).

In his Third Amended Complaint, Plaintiff alleges that Defendant Capitel violated Plaintiff's Fourth Amendment rights (Count I) and committed various state-law torts, including abuse of process (Count II), negligence and negligent infliction of emotional distress (Count III) and intentional infliction of emotional distress (Count IV). (D.I. 24 ¶¶ 11-14). For his

---

2 Plaintiff's former pleadings include allegations dating back to 2017 with respect to his state and federal criminal cases. (*See* D.I. 3, 6 & 20). Because those allegations were not recited in the Third Amended Complaint (*i.e.*, the operative pleading) and are not relevant to Plaintiff's present claims, the Court does not address them.

constitutional claim, Plaintiff alleges that both the strip search and seizure of his legal documents were unreasonable within the meaning of the Fourth Amendment. (*Id.* ¶ 11).

## II. LEGAL STANDARD

### A. Motion for Default Judgment

Entry of default judgment is a two-step process. *Tristrata Tech., Inc. v. Med. Skin Therapy Research, Inc.*, 270 F.R.D. 161, 164 (D. Del. 2010). First, the party seeking a default judgment must request that the Clerk of Court enter default against the party that has failed to answer the pleading or otherwise defend itself in the action. FED. R. CIV. P. 55(a); *see also J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016). After default has been entered, a plaintiff may obtain a default judgment. FED. R. CIV. P. 55(b); *see also J & J Sports*, 2016 WL 1238223, at *1. If seeking relief in the form of a sum certain, the plaintiff may obtain a default judgment from the Clerk of Court. FED. R. CIV. P. 55(b)(1); *see also J & J Sports*, 2016 WL 1238223, at *1. Otherwise, "the party seeking default judgment must apply to the court for an entry of default judgment." *Tristrata Tech.*, 270 F.R.D. at 164.

### B. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

### C. Motion to Amend

The Court should freely grant leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). In the context of requests for leave to amend a pleading, "futility" means that the proposed amended pleading "would fail to state a claim upon which relief could be granted" when applying "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also id.* ("[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.").

## III. DISCUSSION

### A. Motion for Discovery as to Defendant Capitel's Address (D.I. 32)

On September 25, 2025, Plaintiff requested "that defendants provide Aaron Capitel['s] present or last known address to be served by U.S[.] Marshall." (D.I. 32 ("I do not personally need this information but it is needed by the U.S[.] Marshall to complete service as ordered by the Court and it is acceptable to have the address provided directly to the Marshall.")). Defendant Capitel

was served by the U.S. Marshals Service on October 8, 2025. (D.I. 34). Accordingly, Plaintiff's motion for discovery (D.I. 32) is moot and will be denied.

**B. Requests for Default (D.I. 36) and Entry of Default Judgment (D.I. 39)**

On November 13, 2025, Plaintiff requested entry of default against Defendant Capitel and the U.S. Attorney for the District of Delaware, contending that both had failed to plead or otherwise defend. (D.I. 36, 37 & 38). Default was never entered. One week later, on November 20, 2025, Plaintiff moved for default judgment against both Defendant Capitel and the U.S. Attorney for the District of Delaware. (D.I. 39). As an initial matter, Plaintiff's motion for default judgment is improper because default has not been entered. *See* FED. R. CIV. P. 55(a)-(b) (permitting default judgment "against a defendant who has been defaulted for not appearing"); *J & J Sports Prod.*, 2016 WL 1238223, at *1. Additionally, the U.S. Attorney is not a party to this litigation but was instead served pursuant to Rule 4(i). (*See* D.I. 25 ¶ 2 (ordering service upon U.S. Attorney pursuant to Rule 4(i))). The U.S. Attorney therefore had no obligation to answer or otherwise defend, and so default is not appropriate. Finally, default is not warranted against Defendant Capitel because he timely filed a motion to dismiss within sixty days of being served. *See* FED. R. CIV. P. 12(a)(3) (providing sixty days from date of service for federal employees sued in their individual capacity to answer or file motion to dismiss). Therefore, Plaintiff's request for entry of default as to Defendant Capitel and the U.S. Attorney for the District of Delaware will be denied, and the Court recommends that Plaintiff's motion for default judgment as to both also be denied.

**C. Motion to Substitute (D.I. 50)[3] and Related Motions (D.I. 51 & 54)**

In his motion to dismiss, Defendant Capitel (represented by the U.S. Attorney for the District of Delaware) argued that the Federal Tort Claims Act ("FTCA") applies to Plaintiff's state

[3] The United States' motion to substitute is a non-dispositive pretrial matter within the meaning of 28 U.S.C. § 636(b)(1)(A). *See Mikkilineni v. PayPal Inc.*, C.A. No. 20-647-

law tort claims. (D.I. 41 at 7-8; D.I. 43 at 3). On August 3, 2026, the undersigned issued an oral order directing the United States to follow the proper procedure to invoke the FTCA by moving to substitute the United States as a defendant for Plaintiff's state law tort claims and filing a certification pursuant to 28 U.S.C. § 2679(d)(1) that Defendant Capitel's alleged actions were within the scope of his employment. (D.I. 49).[4] The next day, the United States filed the requisite motion and certification. (D.I. 50). Plaintiff thereafter moved for reconsideration of the Court's oral order (D.I. 51), opposed the United States' motion to substitute (D.I. 52 & 53) and moved for leave to conduct limited discovery into the affidavit of probable cause for the warrant to search Plaintiff's prison cell (D.I. 54). Plaintiff also requested an evidentiary hearing. (*See id.* at 3-4).

The United States' certification is *prima facie* evidence that Defendant Capitel's complained-of actions were within the scope of his employment. *Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992). Plaintiff bears the burden of "coming forward with specific facts rebutting the certification." *Id.* at 936. And to justify discovery into the scope-of-employment issue, Plaintiff must make a showing that the United States' certification was "based on any 'different understanding of the facts' than that supported by the complaint." *Giordano v. Hohns*, 159 F.4th 179, 200-01 (3d Cir. 2025) (noting that "[a]s a general matter, there is no right to discovery in a Westfall Act case"); *Lykens v. Peters*, No. 25-1393, 2025 WL 2945674, at *4 (3d Cir. Oct. 17,

---

CFC-SRF, 2020 WL 3792183, at *4 n.13 (D. Del. July 7, 2020), *report and recommendation adopted*, 2021 WL 810359 (D. Del. Mar. 3, 2021).

4 To invoke the FTCA, a defendant technically invokes the Westfall Act, which "immunize[s] federal employees from work-related tort liability and authorize[s] the federal government to intervene in such cases." *Giordano v. Hohns*, 159 F.4th 179, 185 (3d Cir. 2025). The FTCA and Westfall Act work "in tandem" to provide "the 'exclusive' remedy in any 'civil action or proceeding for money damages,' stemming from 'torts committed by federal employees acting within the scope of their employment.'" *Id.* (internal citations omitted).

2025) ("[T]he plaintiff did not contend that the certification turned upon a misunderstanding of the complaint's allegations, which is the key the unlocking limited discovery.").

Plaintiff's requests for additional discovery and an evidentiary hearing are not warranted because Plaintiff does not contend or otherwise show that the United States' certification turned upon a misunderstanding of the Third Amended Complaint's allegations; instead, Plaintiff's answering brief merely recycles allegations from that pleading. (*Compare* D.I. 52 at 2 (alleging that (1) "Defendant was at prison to do a cell search as ordered by the search warrant," (2) "Defendant took legal documents (etc) that was [sic] not part of search warrant and left it off inventory list" and (3) "Defendant ordered an embarrassing body/cavity search by a state employee who was not deputized by the FBI and no body warrant was authorized by Judge"), *with* D.I. 24 ¶¶ 7-9 (alleging that (1) Defendant Capitel searched Plaintiff's cell pursuant to a search warrant, (2) "Defendant Capitel also seized documents from federal and state case of Cooper's that is [sic] not listed on inventory list" and (3) Defendant Capitel ordered a body cavity search of Plaintiff by an "unknown prison official")). Where, as here, a plaintiff has not shown that the United States' certification is based on a different understanding of the relevant facts, permitting additional discovery "would undermine the intent of the Westfall Act to protect federal employees from responding to state law tort claims." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (citation omitted); *see also Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994).

Having determined that additional discovery is not warranted, the Court turns to the scope-of-employment issue. In evaluating whether a federal employee's actions were within the scope of his or her employment, the Court must "look to the law of the state in which the action took place." *Vanderklok v. United States*, 868 F.3d 189, 203 (3d Cir. 2017) (citing *CNA v. United States*, 535 F.3d 132, 146 (3d Cir. 2008)). Here, the alleged actions took place in Delaware, which

applies the Restatement (Second) of Agency's definition of "scope of employment." *See Sanogo v. Univ. of Delaware*, C.A. No. 24-750-RGA, 2025 WL 1425803, at *8 (D. Del. May 16, 2025) (citing *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 154 (Del. 2018)). Under that definition, "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs within the authorized time and space limits; (c) it is activated, in part at least, by a purpose to serve the master; and (d) if force is used, the use of force is not unexpectable." *Sherman*, 190 A.3d at 157 (quoting RESTATEMENT (SECOND) OF AGENCY § 228(1) (1958)). Delaware courts "have taken a broad view of whether an employee's actions are within the scope of employment." *James v. Williams*, No. CV K16C-08-028 JJC, 2017 WL 5900953, at *3 (Del. Super. Ct. Nov. 30, 2017).

As an initial matter, Plaintiff failed to come forward with any facts rebutting the United States' certification. And even taking the alleged facts in the Third Amended Complaint as true, Defendant Capitel's conduct in executing a search warrant was (a) the kind of conduct he is employed to perform as an FBI agent, (b) occurred within authorized time and space limits of the warrant, (c) activated, in part at least, by a purpose to serve the FBI in investigating a crime and (d) used not unexpectable force. Other courts have found that federal agents' actions in executing search warrants under similar circumstances were within the scope of their employment. *See Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991) (finding DEA agents' actions in executing search warrants were within scope of employment "whether or not in the course of so doing they performed wrongful acts, such as entering unannounced to execute the warrants or using excessively intrusive means of executing the warrants"); *Tyson v. Willauer*, No. 3:01 CV 1917 (GLG), 2002 WL 31094951, at *4 (D. Conn. May 28, 2002) (finding "plaintiffs' mere conclusory allegations that [FBI agent] acted 'wrongfully and unreasonably' in searching their

home and in detaining them inside their home" pursuant to warrant insufficient to establish actions outside scope of employment); *see also Blair v. Hueston*, 237 F. App'x 161, 163 (9th Cir. 2007) (finding IRS agent's actions within scope of employment in executing search warrant).

Therefore, the United States' motion to substitute will be granted, and Plaintiff's motions for reconsideration and for leave to conduct limited discovery will be denied.

**D. Motion to Dismiss (D.I. 40)**

As a federal officer, Defendant Capitel may only be sued for constitutional violations under the principles announced in the Supreme Court's decision *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and its progeny. Defendant Capitel argues that Plaintiff has failed to state such a cognizable claim for any purported constitutional violation. (D.I. 41 at 4-7; D.I. 43 at 1-3). The United States (now substituted as defendant for Defendant Capitel with respect to Plaintiff's non-constitutional claims) also argues that the Court lacks subject matter jurisdiction over Plaintiff's non-constitutional (state law) claims because Plaintiff has failed to exhaust his administrative remedies with the appropriate federal agency. (D.I. 41 at 7-8; D.I. 43 at 3). In his answering brief, Plaintiff argues that his "specific case and the fourth amendment claim and other claims fit well within the limited fourth and eighth amendment violations under Bivens." (D.I. 42 ¶ 4). Addressing the constitutional and non-constitutional claims in turn, the Court recommends that all of Plaintiff's claims be dismissed.

1. Constitutional Claims

Plaintiff does not state a cognizable *Bivens* claim. To determine whether a *Bivens* claim may proceed, the Supreme Court has articulated a two-step test. "First, the Court asks whether the case presents 'a new *Bivens* context' – that is, whether the case 'is different in a meaningful way' from the cases in which this Court has recognized a *Bivens* remedy." *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). If so, the Court then asks

at the second step "whether there are 'special factors' indicating that 'the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (cleaned up) (quoting *Egbert v. Boule*, 596 U.S. 482, 492 (2022)). If an "alternative remedial structure" is in place, that alone forecloses a new *Bivens* cause of action. *See Egbert*, 596 U.S. at 493; *see also Fisher v. Hollingsworth*, 115 F.4th 197, 208 (3d Cir. 2024) (describing "alternative remedial structure" as a "quintessential special factor").

Plaintiff's case presents a "new *Bivens* context" because it is "meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 490-92 (citing *Bivens*); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)). Plaintiff's case is based on an FBI agent conducting a search pursuant to a warrant in the Plaintiff's prison cell. *Davis* and *Carlson* are not applicable: *Davis* was about "a Congressman who allegedly violated the Fifth Amendment by firing a staffer because of her sex," and *Carlson* "involved a claim against [federal] prison officials who allegedly violated a prisoner's Eighth Amendment rights when they failed to provide medical treatment." *Fisher*, 115 F.4th at 206. The closest case to Plaintiff's is *Bivens* itself – a case "about narcotics agents who allegedly violated the Fourth Amendment by searching a home without a warrant." *Id.* But Plaintiff's case is meaningfully different from *Bivens* because, among other reasons, Defendant Capitel conducted a search pursuant to a warrant and in Plaintiff's prison cell. *See Hammond v. Acerno*, No. CV 21-3688, 2025 WL 1194476, at *4 (E.D. Pa. Apr. 23, 2025) (finding "meaningful difference" between search pursuant to warrant compared to warrantless search in *Bivens*), *aff'd*, No. 25-2022, 2026 WL 1766139 (3d Cir. June 18, 2026); *see also Leinheiser v. Decker*, No. 20-4380 (RBK) (AMD), 2024 WL 1298880, at *7 (D.N.J. Mar. 27, 2024) ("There can be little doubt that Plaintiff's Fourth

Amendment claim is a new context because it involves allegations regarding the search of a prison cell – not a private residence as was the case in *Bivens*." (collecting cases)).

Because Plaintiff's case involves a new *Bivens* context, the Court turns to the second step and finds that special factors counsel against implying a new private cause of action for the warrant-authorized search of Plaintiff's prison cell. *See Egbert*, 596 U.S. at 492. Here, Plaintiff has an alternative remedial structure – *e.g.*, he could have filed a complaint with the U.S. Department of Justice Office of the Inspector General. *See* 5 U.S.C. § 413(b)(4) (authorizing DOJ Inspector General to investigate DOJ employees for "criminal wrongdoing and administrative misconduct"); 28 C.F.R. §§ 0.29c(d), 0.29h. This alternative grievance procedure is alone sufficient reason to preclude Plaintiff's *Bivens* remedy. *See, e.g.*, *Fisher*, 115 F.4th at 208 (Bureau of Prison's Administrative Remedy Program precluded *Bivens* remedy against federal prison officials); *Dover v. Doe*, No. 25-2075, 2026 WL 594953, at *1 (3d Cir. Mar. 3, 2026) (grievance procedure through Office of Inspector General at the Department of Interior precluded *Bivens* remedy against Rangers of National Park Service); *West v. Matthews*, No. CV 21-15122, 2025 WL 1431036, at *2 (D.N.J. May 19, 2025) (grievance procedure through DOJ Inspector General precluded *Bivens* remedy against FBI agent), *aff'd*, No. 25-2259, 2026 WL 125192, at *2 (3d Cir. Jan. 16, 2026) (affirming district court's conclusion that the "existence of alternative remedies counseled" against *Bivens* remedy). And even if Plaintiff had argued that the grievance procedure is inadequate (he did not), "the alternative remedial structure does not need to be 'as effective as an individual damages remedy' in order to foreclose a *Bivens* claim." *Dover*, 2026 WL 594953, at *1 (quoting *Fisher*, 115 F.4th at 208); *see also Egbert*, 596 U.S. at 493. The Court recommends that Plaintiff's constitutional claims be dismissed for failure to state a claim.

2. Non-Constitutional Claims

The Court lacks subject matter jurisdiction over Plaintiff's state law claims because he failed to exhaust his administrative remedies.[5] *See Garnett v. United States*, C.A. No. 18-2009-LPS, 2019 WL 4393146, at *2 (D. Del. Sept. 13, 2019). The FTCA "requires that, prior to commencing litigation, the claimant 'shall have first presented the claim to the appropriate Federal agency' for its review." *Mulvena v. United States*, C.A. No. 19-1127-RGA, 2019 WL 6037670, at *2 (D. Del. Nov. 14, 2019) (quoting 28 U.S.C. § 2675(a)). The FTCA exhaustion requirement is "jurisdictional and cannot be waived." *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003). Plaintiff bears the burden of establishing subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). And "where an FTCA lawsuit is filed before the exhaustion process is completed, the Court is compelled to dismiss the action." *Garnett*, 2019 WL 4393146, at *2 (dismissing FTCA claim for lack of subject matter jurisdiction where *pro se* plaintiff failed to meet burden of proving exhaustion).

Here, Plaintiff does not dispute that he never submitted his claim to the appropriate federal agency. (*See generally* D.I. 42). And the United States filed the Declaration of William L. Harris, the Unit Chief of the FBI's Discovery Unit,[6] who asserted that a search of the FBI's Central Record

---

5 Plaintiff's filing of an administrative grievance with the JTVCC (D.I. 24, Exs. A & B) does not satisfy the exhaustion requirement because the JTVCC (a state prison) is not the "appropriate Federal agency." 28 U.S.C. § 2675(a); *see also* 28 C.F.R. § 14.2(b)(1) ("A claim shall be presented to the Federal agency whose activities gave rise to the claim."). Because Defendant Capitel is an FBI special agent and was acting within the scope of his employment during the alleged events, the appropriate federal agency was the FBI.

6 Consideration of Mr. Harris's declaration is permissible because "[i]n determining whether subject matter jurisdiction exists, the district court is not limited to the face of the pleadings." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 n.10 (3d Cir. 1992) (citation omitted); *see also* 5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1350 (4th ed. Apr. 2026) ("When the movant's purpose is to challenge the substance of the jurisdictional allegations, he may use affidavits and other additional matter to support the motion.").

System "did not locate any administrative claim submitted to the FBI by or on behalf of plaintiff Maurice Lavon Cooper." (*See* D.I. 41, Ex. A ¶ 7). Dismissal of plaintiff's state law claims is thus warranted. *See Perez-Barron v. United States*, 480 F. App'x 688, 691 (3d Cir. 2012) (affirming dismissal of *pro se* plaintiff's FTCA claim for failure to exhaust based on unrebutted declaration of "a FBOP supervisory paralegal, who stated that based on her review of the FBOP tort claim database, she determined that [plaintiff] had not filed any administrative tort claims").

**E. Motion to Amend the Complaint (D.I. 44) and Motion to Conduct Limited Discovery into Identities of Unknown Defendants (D.I. 45)**

Plaintiff moved to amend on December 29, 2025, seeking to add (in addition to Defendant Capitel) one unidentified FBI agent and five unidentified state correctional officers as defendants. (D.I. 44; D.I. 44-1 ¶¶ 6-8). That same day, Plaintiff sought leave to conduct limited discovery into the identities of the unidentified FBI agent and state correctional officers. (D.I. 45). Based on the same July 2022 search of Plaintiff's prison cell and person, Plaintiff's proposed amendment maintains his Fourth Amendment claim for unreasonable search or seizure (Count I) and adds a First Amendment claim against all defendants for interference with legal mail and access to courts (Count II), a Fifth Amendment claim against Defendant Capitel and the unidentified FBI agent for deprivation of property without due process of law (Count III), a Fourteenth Amendment claim against the unidentified state correctional officers for deprivation of property without due process of law (Count IV) and, finally, First, Fourth and Fourteenth Amendment claims against all defendants for failure to intervene (Count V). (*See* D.I. 44-1 ¶¶ 45-79). Unlike the Third Amended Complaint, Plaintiff does not assert state law claims against any defendant in his proposed amendment. On January 12, 2026, Defendant Capitel opposed Plaintiff's motion to amend on the basis of futility. (D.I. 47). Plaintiff did not file a reply brief.

For the same reasons discussed above in Section III.D.1, Plaintiff's proposed amended *Bivens* claims against Defendant Capitel and the unidentified FBI agent would be futile. *See Hodge v. U.S. Dep't of Just.*, 372 F. App'x 264, 268 (3d Cir. 2010) (affirming denial of motion for leave to amend complaint in *Bivens* action on futility grounds). Describing the same July 2022 warrant-authorized search of Plaintiff's prison cell and accompanying strip search, the proposed amendment presents a "new *Bivens* context" because it is "meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492. As above, the closest case to Plaintiff's is still *Bivens* but Plaintiff's claims are meaningfully different in that, among other reasons, the search here was warrant-authorized and conducted inside Plaintiff's prison cell. *See Hammond*, 2025 WL 1194476, at *4; *Leinheiser*, 2024 WL 1298880, at *7. And considering the "alternative remedial structure" in place (*e.g.*, filing a complaint with the DOJ Inspector General), special factors still counsel against permitting a *Bivens* remedy for Plaintiff's proposed amended claims. *See Fisher*, 115 F.4th at 208; *Dover*, 2026 WL 594953, at *1; *West*, 2025 WL 1431036, at *2.

Additionally, Plaintiff's proposed § 1983 claims against the unidentified state correctional officers would also be futile because they are time-barred. *See Singleton v. DA Philadelphia*, 411 F. App'x 470, 473 (3d Cir. 2011) (affirming denial of motion for leave to amend in § 1983 action on futility grounds where claims would be time-barred). In Delaware, absent tolling, § 1983 claims are subject to a two-year statute of limitations. *See Love v. New Castle Cnty. Police Officer Devon Williams*, C.A. No. 25-499-JLH-EGT, 2026 WL 1970580, at *2 (D. Del. July 8, 2026). Plaintiff's claims began to accrue in July 2022 – *i.e.*, when the alleged events occurred, and when Plaintiff knew or should have known of the allegedly actionable injury. (*See* D.I. 44-1); *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017). None of Plaintiff's former pleadings,

including the two filed after July 2024, named the unidentified state correctional officers as defendants (John Doe or otherwise). (*See* D.I. 3, 6, 20 & 24). Relation back under Rule 15(c) is thus inappropriate because (1) the unidentified state officers have not been notified of the action such that they will not be prejudiced in defending on the merits and (2) there is no indication that these officers otherwise knew or should have known that the action would be brought against them but for a mistake concerning their identity. *See* FED. R. CIV. P. 15(c)(1)(C)(i)-(ii).

In sum, Plaintiff's motion to amend will be denied based on futility. And Plaintiff's motion for discovery into the identities of the unknown defendants will also be denied. *See Rivera v. Monko*, 37 F.4th 909, 917 n.34 (3d Cir. 2022) (discovery into identities of unknown defendants is inappropriate where "the complaint would be dismissed on other grounds" (citation omitted)).

* * *

The Court has now recommended that all of Plaintiff's claims in the Third Amended Complaint be dismissed. Because amendment would be inequitable and futile, the Court recommends dismissal with prejudice for Plaintiff's *Bivens* claim (Count I). *See Kalu v. Spaulding*, 113 F.4th 311, 347 (3d Cir. 2024) (affirming dismissal with prejudice of prisoner's *Bivens* claims that "present novel *Bivens* contexts, and special factors counsel against extending liability to his circumstances"). Plaintiff's remaining state law claims (Counts II-IV) should be dismissed without prejudice for lack of subject matter jurisdiction. *See New Jersey Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (noting that dismissals for lack of subject matter jurisdiction are "by definition without prejudice").

## IV. CONCLUSION

For the foregoing reasons, the United States' motion to substitute (D.I. 50) is GRANTED and Plaintiff's motions to conduct discovery (D.I. 32, 45 & 54), request for entry of default (D.I. 36), motion to amend (D.I. 44) and motion for reconsideration (D.I. 51) are DENIED. The

Court also recommends that Plaintiff's request for default judgment (D.I. 39) be DENIED and Defendants' motion to dismiss (D.I. 40) be GRANTED. The Court further recommends that Count I be DISMISSED WITH PREJUDICE and that Counts II-IV be DISMISSED WITHOUT PREJUDICE.

The parties may file objections to this Order and Report and Recommendation within fourteen (14) days after being served with a copy of the Order and Report and Recommendation. *See* FED. R. CIV. P. 72(a) & (b)(2); *see also* FED. R. CIV. P. 6(d). Any responses to the objections shall be filed fourteen (14) days after the objections. Objections and responses are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights or the right to appellate review. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017); *United Steelworkers of America, AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006-08 (3d Cir. 1987); *Bello v. United Pan Am. Fin. Corp.*, 2025 WL 275109, at *3 n.5 (3d Cir. Jan. 23, 2025).

This Order and Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), Federal Rule of Civil Procedure 72(a) & (b) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: August 21, 2026

UNITED STATES MAGISTRATE JUDGE